Case No. 23-1711/23-1713

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**TIMOTHY HALL,**

Plaintiff-Appellant (23-1711),
Plaintiff-Appellee (23-1713),

v.

**BLAKE NAVARRE, et al.,**

Defendants,

**CITY OF DETROIT, MICHIGAN,**

Defendant-Appellee (23-1711), and

**TIMOTHY BARR,**

Defendant-Appellant (23-1713).

On Appeal from the United States District Court for the
Eastern District of Michigan, Southern Division, Case No. 2:21-cv-12970

**PLAINTIFF-APPELLEE TIMOTHY HALL'S PETITION FOR REHEARING EN BANC**

**CERTIFICATE OF SERVICE**

Submitted by:

Matthew D. Klakulak (P60220)
*Giroux Pappas Trial Attorneys*
28588 Northwestern Hwy., Suite 100
Southfield Michigan 48034
(248) 531-8665
mklakulak@greatMIattorneys.com

Dated: October 16, 2024

Plaintiff-Appellee Timothy Hall (23-1713) petitions this Honorable Court for rehearing en banc of the October 3, 2024 opinion of the Court (which is recommended for publication), to the extent that section III of the majority opinion reversed the judgment of the trial court denying qualified immunity to Defendant-Appellee Timothy Barr (23-1713) on Plaintiff's First Amendment retaliatory prosecution claim brought pursuant to 42 U.S.C. § 1983. A copy of the Court's opinion is attached as Exhibit 1. The basis for Plaintiff's petition for rehearing en banc is set forth in Judge Griffin separate opinion concurring in part and dissenting in part, commencing at page 18 of the attached opinion (which encapsulates the arguments that were made in Plaintiff's Brief on Appeal). In further support, Plaintiff states:

1.      The decision of this Court in consolidated Case No. 23-1713 reversed the judgment of the trial court denying qualified immunity to Defendant-Appellant Timothy Barr (23-1713) on Plaintiff's First Amendment retaliatory prosecution claim brought pursuant to 42 U.S.C. § 1983.

2.      Consideration on rehearing by the full Court is necessary to secure and maintain uniformity of the Court's decisions because the panel decision conflicts with binding, published decisions of the Sixth Circuit, and because the panel's determination presents issues of exceptional importance. Fed. R. App. P. 35(b)(1)

1

3.      More specifically, rehearing en banc is necessitated where the majority opinion erroneously: (1) "grafts a Fourth Amendment good-faith probable cause framework onto our First Amendment retaliation analysis for the first time in our Circuit without explanation or justification"; (2) "relies on factual inferences in Appellant Barr's favor," in defiance of Sixth Circuit jurisdictional limits for an interlocutory appeal; and (3) conflicts with binding Sixth Circuit precedent, including *Thaddeus-X v. Blatter*, 175 F.3d 378 (6th Cir. 1999) (en banc) (per curiam), and *Bunkley v. City of Detroit*, 902 F.3d 552, 563 (6th Cir. 2018), in holding that "as a matter of law, Barr's 'simply following orders' defense is meritorious." (Exh. 1, *Hall* opinion, p. 18).

4.      Defendant Sergeant Timothy Barr issued a ticket to Plaintiff Timothy Hall, citing him for disorderly conduct, disobeying a police officer, and blocking traffic, when he did not witness any conduct by Hall warranting such citations or communicate with his colleagues about Hall. Barr instead issued the ticket solely because his supervisor Lieutenant Cole ordered him to issue tickets to persons who had been conveyed from the scene of the George Floyd/police brutality protest to the Detroit Detention Center Hall, before Mr. Hall was even conveyed there from the hospital and without Cole even specifying what citations to issue to him. (Exh. 1, *Hall* opinion, pp. 3, 18; Barr Dep., p. 22, RE51-15, PgID1016).

5.    Judge Griffin's separate opinion dissents from the majority's reversal of the trial court's conclusion that "taking these facts in the light most favorable to Hall, a reasonable jury could conclude that Barr issued the ticket merely because he believed Hall was protesting, and not because he thought Hall was individually violating the ordinances he was cited for" and "issues of fact of remain for the jury that underpin Barr's qualified immunity defense—notably, whether retaliation was a substantial or motivating factor for the issuance of the citations." *Id.* at 18, 24-25.

## I.    THE MAJORITY OPINION ERRONEOUSLY GRAFTS A FOURTH AMENDMENT GOOD-FAITH PROBABLE CAUSE FRAMEWORK ONTO OUR FIRST AMENDMENT RETALIATION ANALYSIS FOR THE FIRST TIME IN OUR CIRCUIT WITHOUT EXPLANATION OR JUSTIFICATION

6.    First, Judge Griffin notes that while "[i]t is well established in our Fourth Amendment jurisprudence that 'where individual police officers, acting in good faith and in reliance on the reports of other officers, have a sufficient factual basis for believing that they are in compliance with the law, qualified immunity is warranted, notwithstanding the fact that an action may be illegal when viewed under the totality of the circumstances[;]' we have never applied that good-faith exception in the First Amendment context[, n]or should we." (Exh. 1, *Hall* opinion, p. 19 (quoting *Humphrey v. Mabry*, 482 F.3d 840, 847 (6th Cir. 2007)).

7.    This is because of the key differences probable cause plays in First Amendment and Fourth Amendment claims. *Id.*

3

8.     For example, the injuries for a First Amendment retaliation and a Fourth Amendment violation differ markedly. "[W]hen police make a seizure unsupported by probable cause, the injury is the wrongful seizure itself [and c]onsequently, the presence of probable cause will defeat a Fourth Amendment claim because there is no injury." *Id.* (and cases cited therein). On the other hand, the First Amendment "protects against the government 'abridging freedom of speech,'" and "the injury is the attendant chilling effects on free speech and not the wrongful seizure itself." *Id.* at 19-20 (citing *Nieves v. Bartlett*, 587 U.S. 391, 397-99 (2019)). Unlike a Fourth Amendment claim, the presence of probable cause does not automatically defeat a First Amendment claim where "the Supreme Court carved out 'a narrow qualification . . . for circumstances where officers have probable cause to make arrests, but typically exercise their discretion not to do so'" to protect against the "'risk that some police officers may exploit the arrest power as a means of suppressing speech.'" *Id.* at 20 (quoting *Nieves*, 587 U.S. at 406).

9.     Additionally, the Supreme Court instructs lower courts to analyze First and Fourth Amendment claims differently when probable cause is absent. Under the Fourth Amendment, the inquiry is "whether the officer nonetheless had a reasonable, good-faith belief that probable cause existed," and, if so, "the officer is entitled to qualified immunity." *Id.* (and cases cited therein). Whereas, in the First Amendment retaliation context, "'if the plaintiff establishes the absence of probable cause,'"

pursuant to the test set forth in *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274 (1977), "the plaintiff must show that the retaliation was a substantial or motivating factor behind the arrest, and, if that showing is made, the defendant can prevail only by showing that the arrest would have been initiated without respect to retaliation," and "an officer's subjective belief that probable cause existed does not defeat a retaliation claim." *Id.* 20-21 (quoting and citing *Nieves*, 587 U.S. at 403).

10.     Based on the foregoing, Judge Griffin's dissenting opinion concludes that "[r]ather than fundamentally alter the Supreme Court's framework for First Amendment retaliation claims" as the majority opinion has done, he would "follow the Supreme Court's instructions and consider Barr's assertion of good faith as part of the *Mt. Healthy* test, not as a freestanding exception that automatically defeats Hall's First Amendment claim," and, under this analysis, Hall's retaliation claim survives summary judgment, because at this stage in the litigation, it remains "an open question whether Hall's participation in the protest was a substantial or motivating factor behind Barr's citations." *Id.* at 21.

## II.   THE MAJORITY OPINION ERRONEOUSLY RELIES ON FACTUAL INFERENCES IN DEFENDANT BARR'S FAVOR, DEFYING SIXTH CIRCUIT JURISDICTIONAL LIMITS FOR AN INTERLOCUTORY APPEAL

11.   Next, even following the majority's unexplained, novel analytical framework that "an officer's good faith belief alone defeats First Amendment retaliatory causation, the record does not support Barr's alleged good-faith probable cause belief," which he bases on "(1) other officers' collective knowledge and (2) his supervisor's order to issue the citations." (Exh. 1, *Hall* opinion, p. 21).

12.   As Judge Griffin's dissent notes, this Court's limited jurisdiction in an interlocutory appeal bars resolution of the fact issue whether Barr based his decision to issue citations to Hall based upon communications with other officers, and consideration of Barr's review of the other officer's collective knowledge. *Id.* at 22.

13.   Judge Griffin observes "[t]he district court concluded that 'it is not clear that other officers' knowledge should be imputed to Barr' because 'the record is not clear that Barr and other officers communicated the relevant information among themselves.'" *Id.* at 22; (Barr Dep., pp. 54, 58, RE51-15, PgID1024-25). That factual determination ends the discussion because there cannot be collective knowledge without communication. *Id.* (citing *Brown v. Lewis*, 779 F.3d 401, 412 (6th Cir. 2015)).

14.     Despite this, Judge Griffin notes that the majority nonetheless improperly "imputes facts known and observed by other officers to Barr." *Id.* However:

> Barr never personally saw protestors engage in unlawful behavior. Barr was not stationed on the block where Hall was arrested or even the block where the protesters gathered. Barr walked to the area where the protests took place only after police officers shut down the protest. And Barr did not see the video depicting Hall's arrest or the "chaotic" scene surrounding it before Barr cited Hall that evening. [*Id.* at 22-23.]

Judge Griffin's dissent observes that, despite the foregoing, "the majority ignores our jurisdictional limitation and construes the facts in a light favorable to Barr by relying on these details to support Barr's probable cause claim." *Id.* at 23.

15.     Judge Griffin additionally contends the majority's reasoning that Barr "would have understood [the protestors] all to be part of the same illegal activity," is faulty because "Hall's presence among protestors who were involved in unlawful conduct is not enough to give rise to probable cause." *Id.* This is because "[w]hen an individual joins a group, he does not lose his individual rights." *Id.* (citing and quoting *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979); *Barham v. Ramsey*, 434 F.3d 565, 575 (D.C. Cir. 2006); *Wilson v. City of Boston*, 421 F.3d 45, 56 (1st Cir. 2005); *Jones v. Parmley*, 465 F.3d 46, 60 (2d Cir. 2006); and *Bourgeois v. Peters*, 387 F.3d 1303, 1311 (11th Cir. 2004)).

### III. THE MAJORITY OPINION ERRONEOUSLY HOLDS, CONTRARY TO SIXTH CIRCUIT PRECEDENT, THAT, AS A MATTER OF LAW, BARR'S "SIMPLY FOLLOWING ORDERS" DEFENSE IS MERITORIOUS

16.    Finally, Judge Griffin's dissent notes that, "[w]ithout collective knowledge about Hall's conduct at the protest, Barr's only basis for probable cause is the order from his supervisor." (Exh. 1, *Hall* opinion, p. 23). But "[r]eliance on a superior's orders does not in itself dissipate all liability." *Id.* (quoting *Thaddeus-X*, 175 F.3d at 393 (en banc) (Moore, J.).

17.    Judge Griffin's dissent notes that, while:

> The majority attempts to distinguish *Thaddeus-X* by asserting that the "context and circumstances" here suggest that Barr's reliance on Officer Cole's order was reasonable while the prison officials' reliance in *Thaddeus-X* was not. But beyond that bare assertion, the majority does not explain how the circumstances of this case and *Thaddeus-X* differ in any meaningful way. Indeed, the majority admits that, in *Thaddeus-X*, there was no exigency forcing the prison officials to make rushed decisions. So too here. Barr had time to independently determine whether probable cause supported the citations against Hall. Barr could have spoken with other officers, including Navarre, to learn about Hall's alleged unlawful actions. It seems that, on the record before us, *Barr was unaware of the context and circumstances surrounding Hall's arrest*. And it is clearly established that Barr is not entitled to qualified immunity because he was "simply following orders." [*Id.* at 24 (emphasis added) (quoting *Bunkley v. City of Detroit*, 902 F.3d 552, 563 (6th Cir. 2018).]

18.    Barr's conduct, as construed by the district court and supported by the evidence, amounts to unlawful blind faith given that he had ample time to ponder the legality of his actions, yet nonetheless issued Plaintiff two misdemeanor citations

and a civil infraction for nothing more than lawfully protesting police misconduct. To permit qualified immunity here for "simply following orders" awards blind faith and a disregard of the district court's distinct factual analysis; *i.e.*, it amounts to what has been described as the infamous "Nuremberg defense." See *Jay v. United States*, 865 F.2d 1175, 1177, n.3 (10th Cir. 1989) (noting the invalidity of a defense to war crimes proffered by high-ranking Nazi officials at the Nuremberg trials who "defended their actions by claiming that they were not responsible for their actions because they were only following orders from their superiors.").

19.    Based upon the three foregoing issues plaguing the majority's opinion to the contrary, Judge Griffin's dissent concludes that:

> Without knowing whether Barr had collective knowledge to justify a belief that he had probable cause, and with precedent foreclosing Barr from arguing that he was simply following orders, we are left with Hall's asserted causal explanation: Barr cited Hall just because he protested and was detained with other protesters who allegedly violated the law. But this guilt-by-association explanation is the essence of Hall's retaliation claim. It has long been "settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out."
>
> Without a finding of probable cause that generally defeats a retaliatory arrest claim, the issue of motive for the citations should go to the jury. [*Id.* at 24 (quoting *Hartman v. Moore*, 547 U.S. 250, 256 (2006); *see also Greene v. Barber*, 310 F.3d 889, 897-98 (6th Cir. 2002)).]

20.    In further support of this Petition, Plaintiff-Appellee Timothy Hall relies upon his January 9, 2024 Corrected Brief on Appeal, which provides additional factual detail and explication.

Wherefore, for all the foregoing reasons, Plaintiff-Appellee respectfully requests this Honorable Court grant their Petition for Rehearing En Banc and reverse the panel's decision in section III of the majority opinion finding Defendant-Appellant Timothy Barr (23-1713) is entitled to qualified immunity on Plaintiff's First Amendment retaliatory prosecution claim.

Respectfully submitted,

***Giroux Pappas Trial Attorneys***

Dated: October 16, 2024

By: /s/ Matthew D. Klakulak

Matthew D. Klakulak (P60220)
Attorneys for Plaintiff-Appellee
28588 Northwestern Highway, Suite 100
Southfield, Michigan 48034
(248) 531-8665/F: (248) 308-5540
mklakulak@greatMIattorneys.com

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 35(b)(2)(A), I certify that this petition complies with the type/volume limitation. The number of words in this petition is 2,208. The petition was prepared in proportionally spaced typeface using Microsoft Word, Times New Roman, 14-point.

Respectfully submitted,

*Giroux Pappas Trial Attorneys*

Dated: October 16, 2024

By: /s/ Matthew D. Klakulak
Matthew D. Klakulak (P60220)
Attorneys for Plaintiff-Appellee
28588 Northwestern Highway, Suite 100
Southfield, Michigan 48034
(248) 531-8665/F: (248) 308-5540
mklakulak@greatMIattorneys.com

## CERTIFICATE OF SERVICE

I hereby certify that on October 17, 2024, a copy of the Plaintiff-Appellee Timothy Hall's Petition for Rehearing En Banc was filed electronically. Notice of this filing will be sent to the filing parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Respectfully submitted,

*Giroux Pappas Trial Attorneys*

Dated: October 16, 2024

By: /s/ Matthew D. Klakulak
Matthew D. Klakulak (P60220)
Attorneys for Plaintiff-Appellee
28588 Northwestern Highway, Suite 100
Southfield, Michigan 48034
(248) 531-8665/F: (248) 308-5540
mklakulak@greatMIattorneys.com

**EXHIBIT 1**

RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 24a0225p.06

# UNITED STATES COURT OF APPEALS

### FOR THE SIXTH CIRCUIT

───────────────

TIMOTHY HALL,

　　　　　　*Plaintiff-Appellant* (23-1711),
　　　　　　*Plaintiff-Appellee* (23-1713),

　　*v.*

BLAKE NAVARRE, et al.,

　　　　　　　　*Defendants*,

CITY OF DETROIT, MICHIGAN,
　　　　　　*Defendant-Appellee* (23-1711),

TIMOTHY BARR,

　　　　　　*Defendant-Appellant* (23-1713).

Nos. 23-1711/1713

───────────────

Appeal from the United States District Court for the Eastern District of Michigan at Detroit.
No. 2:21-cv-12970—Laurie J. Michelson, District Judge.

Argued:  May 1, 2024

Decided and Filed:  October 3, 2024

Before:  SUTTON, Chief Judge; GRIFFIN and READLER, Circuit Judges.

───────────────

### COUNSEL

**ARGUED:**  Matthew D. Klakulak, GIROUX TRIAL ATTORNEYS, Southfield, Michigan, for Timothy Hall.   Gregory D. Paddison, CITY OF DETROIT, Detroit, Michigan for Timothy Barr and City of Detroit.  **ON BRIEF:**  Matthew D. Klakulak, GIROUX TRIAL ATTORNEYS, Southfield, Michigan, for Timothy Hall.   Linda D. Fegins, CITY OF DETROIT, Detroit, Michigan, for Timothy Barr and City of Detroit.

　　　　READLER, J., delivered the opinion of the court in which SUTTON, C.J., joined in full, and GRIFFIN, J., joined Sections I and II.  GRIFFIN, J. (pp. 18–25), delivered a separate opinion concurring in part and dissenting in part.

———————————

## OPINION

———————————

CHAD A. READLER, Circuit Judge.  Timothy Hall participated in a protest in Detroit. As law enforcement broke up the demonstration, a City of Detroit officer tackled and injured Hall.  He was later ticketed by a different city officer for disorderly conduct based upon his participation in the rally.  Those events resulted in two lawsuits by Hall, one against the City of Detroit and another against city officers, including the one who ticketed Hall.  Each suit was based in part on the premise that defendants retaliated against Hall for exercising his First Amendment rights.  After consolidating the suits and denying Hall's request to extend the discovery period, the district court granted summary judgment in favor of the City but denied the ticketing officer's assertion of qualified immunity.

We agree with the district court in most respects.  We affirm the denial of Hall's motion to adjourn the discovery deadline as well as the grant of summary judgment to the City.  As to Hall's First Amendment claim, however, because the officer is entitled to qualified immunity, we reverse the district court's decision denying the officer's motion for summary judgment.

## I.

In the wake of George Floyd's death in 2020, Timothy Hall attended several protests in Detroit.  There, he encountered numerous City of Detroit police officers.  At one demonstration, Hall skirmished with officer Blake Navarre.  Hall would leave the scene uninjured and without being ticketed or otherwise detained.

About a month later, the two would encounter each other once more, again at a protest. Hall, outfitted in tactical gear, was among a number of protesters spread out across a major city thoroughfare and an adjacent sidewalk. On several occasions, officers announced over loudspeakers that the protest was "an unlawful assembly," and that the participants were required "to leave the roadways and enter the sidewalks."  Eventually, Navarre's unit mobilized to disperse the crowd from the street.  Navarre observed Hall standing nearby with a group of protesters on the sidewalk.  Meanwhile, Chief of Police James Craig informed command staff

officer Darin Szilagy "to engage" the protesters.  Szilagy ordered Navarre's team to advance against the crowd and arrest those who did not disperse.  Navarre rushed a group of protesters, tackling Hall as he was standing on the sidewalk.  After dragging Hall to the curb alongside other arrestees, Navarre noticed Hall bleeding from his lip and requested medical attention.  Hall was transported to the hospital, where he was diagnosed with a closed-head injury and two broken bones in his hand.  He received stitches to his lip.

Officer Timothy Barr arrived at the scene after the crowd had been broken up.  Barr saw an individual he later identified as Hall sitting on the curb with other arrestees, each bound by zip ties.  Barr's supervisor, officer Brandon Cole, instructed Barr to help issue tickets at a nearby detention center, where arrested protesters were being transported.  While at the center, Barr issued Hall a ticket for "disorderly conduct," "disobeying [a] lawful order of a police officer," and "blocka[ding] a moving lane of traffic."  At the time, however, Hall was at a hospital receiving medical attention.  What is more, Barr had neither witnessed Hall engaging in the actions for which he was being ticketed nor been informed of Hall's specific conduct.  Rather, he inferred Hall's presence at the protest from the fact that, by the time Barr arrived, Hall had been "taken into custody by a member of the Detroit Police Department [and] . . . had zip ties on." The charges against Hall were later dismissed.

Hall filed suit against Barr and Navarre, asserting claims under 42 U.S.C. § 1983 as well as Michigan state law.  Included among the theories of liability in Hall's complaint were claims for unreasonable search, seizure, and detention, malicious prosecution, and First Amendment retaliation by Barr and Navarre, and excessive force by Navarre alone.  Following a conference held in accordance with Federal Rule of Civil Procedure 16, the district court issued a scheduling order setting the fact discovery deadline for November 4, 2022, and the dispositive motion deadline for February 6, 2023.

Separately, Hall sued the City of Detroit in state court.  He asserted that the City was liable for the acts of its officers.  *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).  The City removed the case to federal court in early August 2022, where the parties stipulated to its consolidation with the case pending against the individual officers.  That same day, the district court notified the parties that "[a]ll original deadlines and hearings remain in effect," including

discovery deadlines. No party moved the court to alter those deadlines, although the parties informally agreed to take depositions and make discovery requests after discovery formally ended. The City answered Hall's complaint on October 10, fewer than four weeks before the November 4 discovery deadline.

Following the deadline's passage, Barr and the City moved for summary judgment on all claims. Hall, for his part, moved the district court to adjourn the scheduling order to afford him more time to take discovery related to his *Monell* claims against the City. The district court denied this request and, in turn, granted summary judgment in favor of the City. As to Barr's motion for summary judgment, the court granted it in part. It awarded judgment to Barr on most claims but denied his assertion of qualified immunity as to Hall's First Amendment retaliation claim. Hall's claims against Navarre, meanwhile, remain pending in district court.

Two timely appeals followed. In one, Barr appealed the denial of summary judgment as to Hall's First Amendment retaliation claim. *See Mitchell v. Forsyth,* 472 U.S. 511, 530 (1985) (holding that denials of qualified immunity are appealable final judgments). In the other, Hall appealed the denial of his motion to adjourn the scheduling order and the grant of summary judgment in favor of the City. This procedural posture bears a moment of jurisdictional reflection. Although one of Hall's consolidated suits remains before the district court, the district court's grant of summary judgment in favor of the City fully resolved his consolidated *Monell* case. That resolution is thus a final judgment over which we have jurisdiction. *See Hall v. Hall*, 584 U.S. 59, 66 (2018). Before us, the two appeals are consolidated for review.

## II.

A. We turn first to Hall's appeal, starting with his challenge to the denial of his motion to adjourn the scheduling order. District courts, it is well understood, enjoy "broad discretion over docket control and the discovery process." *Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 642 (6th Cir. 2018). Those are matters in which we rarely intervene. We do so only when, upon reviewing the record, we are left "with a definite and firm conviction that the court below committed a clear error of judgment," and thus abused its discretion. *Id.* (cleaned up).

The customary procedural practices in this area are also settled.  As Federal Rule of Civil Procedure 16 instructs, the district court "must issue a scheduling order" early in a case's history, either after receiving a Federal Rule of Civil Procedure 26(f) discovery plan from the parties or after meeting with the parties at a scheduling conference.  Fed. R. Civ. P. 16(b)(1).  Here, the district court held a scheduling conference as to Hall's suit against the officers.  The court's ensuing scheduling order set November 4, 2022, as the fact discovery deadline and February 6, 2023, as the dispositive motions deadline.  By stipulation of the parties, the district court later consolidated Hall's suit against the officers with his recently removed *Monell* suit against the City to facilitate "efficient trial administration."  At the same time, the district court informed the parties that "[a]ll original deadlines and hearings remain[ed] in effect."

Hall believes that the district court was required to issue a new scheduling order specific to his *Monell* suit.  To Hall's mind, because consolidation of two actions "does not merge the suits into a single cause," *Kraft, Inc. v. Local Union 327*, 683 F.2d 131, 133 (6th Cir. 1982) (per curiam) (citation omitted), Rule 16(b)(1) required the district court to issue a new scheduling order applicable only to the removed case.  Whether his point has merit in the abstract, the fact remains that Hall raised it for the first time in a motion for reconsideration.  That rendered his assertion "untimely," meaning the issue is "forfeited on appeal."  *Evanston Ins. Co. v. Cogswell Props., LLC*, 683 F.3d 684, 692 (6th Cir. 2012).

Short of issuing a new scheduling order, Hall contends that the district court still abused its discretion by failing to modify the original order following consolidation of his two suits.  With the City answering the *Monell* complaint on October 10, Hall had just 25 days remaining to complete discovery before the November 4 deadline.  According to Hall, this schedule deprived him of a reasonable discovery period for his *Monell* claims.

Federal Rule of Civil Procedure 16(b)(4) frames the backdrop for our review.  It states that a "schedule may be modified only for good cause and with the judge's consent."  When reviewing a district court's denial of an extension of time for discovery under Rule 16, we consider five factors:  "(1) when the moving party learned of the issue that is the subject of discovery; (2) how the discovery would affect the ruling below; (3) the length of the discovery period; (4) whether the moving party was dilatory; and (5) whether the adverse party was

responsive to . . . discovery requests." *Bentkowski v. Scene Mag.*, 637 F.3d 689, 696 (6th Cir. 2011) (citation omitted).

Virtually every factor weighs against Hall. He knew that the original scheduling order would apply to his case against the City when the district court docketed a notice to that effect immediately following consolidation on August 15. Yet Hall did not raise any concerns, and instead "waited four months after the *Monell* claim was added, three months after fact discovery closed, and hours after [d]efendants moved for summary judgment to ask" to adjourn the schedule. *See also Pittman*, 901 F.3d at 643 (finding no abuse of discretion in denying a motion to compel discovery when no prior modification was sought, and where the motion was filed "almost four months after the deadline to complete discovery" and after a party "moved for judgment on the pleadings"). And, it bears adding, Hall says little as to what this additional discovery period could have revealed, other than to suggest that the narrow discovery window hindered his "ability to adequately litigate his distinct *Monell*" claims. We require more. *See Shane v. Bunzl Distrib. USA, Inc.*, 200 F. App'x 397, 407 (6th Cir. 2006). On top of that, defendants cooperated after the deadline to provide discovery Hall concedes was "related to" his *Monell* claims, further undermining any purported abuse of discretion by the district court. *See Dowling v. Cleveland Clinic Found.*, 593 F.3d 472, 480 (6th Cir. 2010) (explaining that when the adverse party "complie[s]" with "discovery requests," allowing any "additional time for discovery" would not "have a substantial effect on the outcome of the case").

Perhaps defendants' cooperation could have led Hall to believe that discovery could be completed without court intervention. But that was far from certain, and thus does not fully justify Hall's failure to request an extension prior to the formal close of discovery. That shortcoming cements Hall's failure to demonstrate good cause justifying a modification to the scheduling order. *See, e.g.*, *Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828, 834 (6th Cir. 1999) (requiring a "justification for the delay"); *see also Bentkowski*, 637 F.3d at 697; *Leary v. Daeschner*, 349 F.3d 888, 907 (6th Cir. 2003). In short, we have little basis to question the district court's management of the discovery process. *See Dowling*, 593 F.3d at 478 ("The overarching inquiry in these overlapping factors is whether the moving party was diligent in

pursuing discovery.").  While Hall's complaint about the limited discovery timeline arguably tips the third factor his way, that is not enough to demonstrate an abuse of discretion.

B.  That takes us to the substantive aspects of Hall's appeal.  Asserting a theory of municipal liability under *Monell*, Hall sued the City for violations of the First, Fourth, and Fourteenth Amendments.  The district court awarded the City summary judgment on all claims. We review that decision de novo.  *Delek US Holdings, Inc. v. United States*, 32 F.4th 495, 497 (6th Cir. 2022).  In so doing, we construe all evidence in favor of Hall and ask whether the City has demonstrated that it "is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

1.  Before turning to the merits, we address a threshold issue.  Hall contends that the City failed to meet its burden of production under *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), when it moved for summary judgment.  Specifically, Hall faults the City for failing to identify specific record evidence demonstrating the absence of a genuine dispute of fact.  *See id.* at 323 (instructing that "a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact").

We disagree.  The *Celotex* burden typically amounts to "little more than a formality." Edward Brunet, et al., Summary Judgment: Federal Law & Practice § 5:6 (Dec. 2023 Update). In practice, a movant need only assert the lack of any genuine disputes of material fact in the record.  *See Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995) ("To meet [the burden of production], the moving party . . . may merely rely upon the failure of the nonmoving party to produce any evidence which would create a genuine dispute for the jury." (citation omitted)); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989) ("[A] party may move for summary judgment asserting that the opposing party will not be able to produce sufficient evidence at trial to withstand a directed verdict motion.").  The City did so.  It asserted that Hall had not adduced facts to support his *Monell* claim.  Admittedly, it did not do much more, other than attaching 17 exhibits, including entire deposition transcripts.  Yet that was enough to satisfy the light burden of production we impose on a party moving for summary judgment.  So we may proceed to the merits of Hall's *Monell* claims.

2.  Section 1983 authorizes an individual to bring suit against state and local officials who deprive the individual of a federal right under color of state law.  *See* 42 U.S.C. § 1983.  In *Monell*, the Supreme Court extended § 1983 liability to municipalities when a government policy or custom causes the deprivation of a federal right.  436 U.S. at 694.  Yet it confined that exposure in notable ways.  A municipality, the Supreme Court emphasized, may not be found liable under § 1983 "*solely* because it employs a tortfeasor."  *Id.* at 691.  In other words, Hall may not rely on a theory of respondeat superior alone.  *Id.*  Rather, he "must identify [a] policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy."  *Jackson v. City of Cleveland*, 925 F.3d 793, 829 (6th Cir. 2019) (cleaned up).

To that end, Hall claims that city officers deprived him of his First and Fourth Amendment rights respectively when executing city policies regarding the protesters.  What specific city policy led to Navarre's conduct?  Rather than a formal written policy, Hall says it was an "action[] taken by officials with final decision-making authority," *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005), specifically, an order by Chief Craig.

Hall describes the relevant sequence of events this way.  Soon after officers formed a line and were about to move, Szilagy "got [Craig] on the phone" and learned "we have to engage."  Craig, says Hall, was "an undisputed policy maker" on behalf of the City.  And not long after Craig delivered the command to Szilagy to "engage" the protesters, Hall was tackled.  Accordingly, Hall concludes, the city policy (as articulated by Craig) of engaging the protesters resulted in him being "tackl[ed] and arrest[ed]."

Even assuming, as did the district court, that Craig was a policymaker for purposes of *Monell*, Hall fails to establish that his constitutional injury was "incurred because of the execution of that policy."  *Jackson*, 925 F.3d at 829 (citation omitted).  "[I]t is not enough for [Hall] merely to identify conduct properly attributable to the [City]."  *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997).  Rather, he must also show that the City "was the 'moving force' behind the injury alleged."  *Id.*  That climb is even greater when, as Hall acknowledges here, the policy at issue is facially legal and thus was not the direct cause of Hall's injury.  *See id.* at 405.  In that case, we must apply "rigorous standards of culpability and

causation," *id.*, keeping *Monell* liability from collapsing into de facto respondeat superior liability, *see Brawner v. Scott County*, 14 F.4th 585, 601 (6th Cir. 2021) (Readler, J., concurring in part and dissenting in part).

*Bryan County* helps frame the degree of culpability needed to attribute an injury to a decisionmaker's facially lawful policy. In his suit against the county following injuries sustained at the hands of a Bryan County officer, Brown alleged that the policymaker for the county sheriff's department had not adequately reviewed the offending officer's background. 520 U.S. at 400–01. Like here, the policy at issue had no facially illegal aspects; in particular, it did not itself authorize the use of excessive force. *Id.* at 405. That setting, the Supreme Court recognized, "present[s] much more difficult problems of proof" than do settings where the municipality's decision is itself unconstitutional. *Id.* at 406; *cf. Pembaur v. City of Cincinnati*, 475 U.S. 469, 472–74 (1986) (describing a final decisionmaker's order to violate the plaintiff's constitutional rights). It follows that when a plaintiff seeks to impose *Monell* liability on the basis of a lawful policy that results in a municipal employee violating a federal right, he "must demonstrate that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences." *Bryan County*, 520 U.S. at 407 (citation omitted); *see also City of Canton v. Harris*, 489 U.S. 378, 389 (1989). Otherwise, a plaintiff demonstrates only "that the *employee* acted culpably." *Bryan County*, 520 U.S. at 406–07.

Hall cannot make this showing. Craig's command to engage the protesters was neither facially infirm nor taken with deliberate indifference to its known or obvious consequences. *See id.* at 407. Absent such evidence, Hall cannot demonstrate that the City's nebulous policy of engaging the protesters was the "moving force" behind his alleged injuries. *Id.* at 404; *see also City of Canton*, 489 U.S. at 387–89 (explaining that a finding of deliberate indifference in the context of a "concededly valid policy" is "consistent" with *Monell*'s requirement that a municipality may be held liable "only where its policies are the moving force behind the constitutional violation" (cleaned up)).

Hall takes issue with this framework. To his mind, it is enough for him to show that Navarre's specific use of force was unconstitutional, and that Craig's order, even if lawful on its face, nonetheless was carried out in an improper manner. Put differently, Hall believes that a

mere but-for causal connection between a city policy and his injury is enough to establish municipal liability.

Not so. When a facially legal municipal policy is at issue, more than but-for causation is required. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985) (plurality opinion). Otherwise, *Monell* would "become a dead letter." *Id.* At the extreme, any municipal policy, however benign, from a police department's decision to hire an individual to a municipality's choice to enforce the laws at all, could be a but-for cause of one constitutional violation or another. *See id.*; *Bryan County*, 520 U.S. at 410 ("Every injury suffered at the hands of a municipal employee can be traced to a hiring decision in a 'but-for' sense: But for the municipality's decision to hire the employee, the plaintiff would not have suffered the injury.").

Hall likewise seeks to hold the City liable for the ticket he received from Barr. Hall argues that the citation was issued in retaliation for Hall's attendance at the protest, thereby amounting to a First Amendment violation. Hall attempts to tie the citation to city policy by pointing to Cole's instruction that Barr issue mass citations, a directive Hall says came from the police department's "highest ranking officials." He labels this instruction the "moving force" behind his constitutional injury. But Hall nowhere argues that Cole was an "official[] with final decision-making authority." *Thomas*, 398 F.3d at 429. Equally absent is evidence that Barr was ordered to issue the citation in retaliation for Hall's First Amendment activity, let alone evidence that the City was deliberately indifferent to the possible constitutional consequences of the ticketing. *See Bryan County*, 520 U.S. at 407. Here too, then, he fails to show that the alleged city policy caused his specific injury.

Accordingly, we affirm the award of summary judgment to the City on Hall's *Monell* claims.

### III.

That leaves Barr's appeal of the denial of qualified immunity as to Hall's First Amendment retaliatory prosecution claim, also pursued under § 1983. The district court rejected Barr's assertion of qualified immunity, concluding that triable issues of fact remained for the jury as to whether a constitutional violation occurred. Barr exercised his right to take an

interlocutory appeal of that decision, *Mitchell* 472 U.S. at 530, a decision we view through a de novo lens, *Sterling Hotels, LLC v. McKay*, 71 F.4th 463, 466 (6th Cir. 2023).

Consider the formidable legal regime Hall faces given Barr's assertion of qualified immunity. *See T.S. v. Doe*, 742 F.3d 632, 635 (6th Cir. 2014) ("Once the defendant raises a qualified-immunity defense, the burden shifts to the plaintiff."). That manner of immunity shields government officials like Barr from the "burdens of litigation," *Mitchell*, 472 U.S. at 526, when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Hall accordingly bears the burden of showing that Barr violated a constitutional right, and that the right at issue was clearly established. *Bunkley v. City of Detroit*, 902 F.3d 552, 559 (6th Cir. 2018). To demonstrate a First Amendment retaliation claim, the constitutional violation asserted here, Hall must show three things: that the First Amendment protected his presence at the protest, that Barr took an adverse action against him by issuing the citation, and that there was a causal connection between his protected activity and the adverse conduct. *DeCrane v. Eckart*, 12 F.4th 586, 593 (6th Cir. 2021). On top of that, Hall must also "plead[] and prove[]" the absence of probable cause supporting the allegedly retaliatory prosecution. *Hartman v. Moore*, 547 U.S. 250, 265–66 (2006). Further, to demonstrate that a First Amendment right was clearly established at the time of the violation, Hall must convince us that it would have been clear to Barr that his "actions were unlawful in the situation [he] confronted." *Lanman v. Hinson*, 529 F.3d 673, 688 (6th Cir. 2008). Between these two considerations, we may take them in either order. *See Pearson*, 555 U.S. at 236. With that understanding in mind, we turn to the second—whether Hall demonstrated that the right he alleges Barr violated was clearly established—as that analysis begins and ends the matter. *See Tlapanco v. Elges*, 969 F.3d 638, 656–57 (6th Cir. 2020) (declining "to address the first prong of the qualified immunity analysis" when the second was "dispositive").

1. In addressing the clearly established prong, we assess the "objective legal reasonableness" of the allegedly unlawful action "in light of the legal rules that were clearly established at the time it was taken." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987) (cleaned

up).  It follows that, at the very least, Hall must demonstrate that the right Barr allegedly invaded is sufficiently "particularized," enough "that a reasonable official would understand that what he is doing violate[d] that right."  *Id.* at 640.  Examining Supreme Court precedent as well as that of the circuit courts, we ask whether those authorities "placed the . . . constitutional question beyond debate."  *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011); *Andrews v. Hickman County*, 700 F.3d 845, 853 (6th Cir. 2012).  Doing so ensures that liability attaches only to "the plainly incompetent or those who knowingly violate the law."  *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

What clearly established right did Barr allegedly violate?  Hall describes it as his right "to be free from retaliatory arrest unsupported by probable cause as a result of protesting public officials and policies."  Doing so frames the right at an impermissibly high level.  *See al-Kidd*, 563 U.S. at 742 (instructing lower courts "not to define clearly established law at a high level of generality").  In particular, it ignores the critical, undisputed fact that Barr ticketed Hall only after Cole, his commanding officer, directed him to do so. Any definition of the right at issue must take account of this detail, narrowing the scope of the First Amendment inquiry.  *See, e.g.*, *Reichle v. Howards*, 566 U.S. 658, 665 (2012) ("Here, the right in question is not the general right to be free from retaliation for one's speech, but the more specific right to be free from a retaliatory arrest that is otherwise supported by probable cause."); *Wood v. Moss*, 572 U.S. 744, 759–60 (2014) (defining the First Amendment right at issue as the Secret Service's ensuring different groups have "equal access" to the President when it is engaged in crowd control); *DeCrane*, 12 F.4th at 599 ("In this speech context, . . .  plaintiffs generally cannot defeat qualified immunity simply by arguing that they have a clearly established right not to suffer an 'abridgment' of the 'freedom of speech.'" (quoting U.S. CONST. amend. I.)).  Because a superior officer's credible instruction can support another officer's reasonable belief that probable cause is present, Cole's command informs our inquiry whether Barr understood that his actions violated the First Amendment.  *See Bunkley*, 902 F.3d at 562; *Hartman*, 547 U.S. at 265–66. Accordingly, we ask whether Barr violated clearly established law by following an order to cite Hall even where Barr, as the district court seemingly inferred, maintained a speech-based retaliatory animus.

The answer is no.  Two poles anchor the legal framework.  At one end is the understanding that an officer cannot benefit from qualified immunity's shield simply by asserting that he was "following orders."  *Bunkley*, 902 F.3d at 563.  At the other is the notion that qualified immunity may be warranted when "reasonable officers could conclude that they have probable cause" for their conduct "based on plausible instructions from a supervisor when viewed objectively in light of their own knowledge of the surrounding facts and circumstances." *Id*. at 562 (cleaned up); *see also Dolbin v. Miller*, 786 F. App'x 52, 58 (6th Cir. 2019); *Bilida v. McCleod*, 211 F.3d 166, 174 (1st Cir. 2000) ("Plausible instructions from a superior or fellow officer support qualified immunity where, viewed objectively in light of the surrounding circumstances, they could lead a reasonable officer to conclude that the necessary legal justification for his actions exists.").  Between the two, Barr's conduct falls closer to the latter.

*Saad v. Keller* is a helpful guide.  546 F. App'x 552 (6th Cir. 2013).  There, officers were ordered by a superior to enter the plaintiff's home to effectuate his arrest.  *Id*. at 559.  The ranking officer who gave the order had witnessed the relevant facts, facts that arguably did not justify a lawful entry and arrest.  The other officers, however, arrived on the scene after those events had unfolded.  *Id*.  On that record, we concluded that it would not have been clear to the remaining officers that arresting the plaintiff was illegal, in particular because the officers had no reason "to question their superior Officer's directive."  *Id*.  Accordingly, we granted the officers qualified immunity.

Other circuits, it bears adding, view the law in a similar way.  In *Halley v. Huckaby*, the Tenth Circuit granted qualified immunity to an officer sued for unlawful seizure because "he merely relied on the . . . officials' directions" to transport a minor child to a safe-house "without knowing specifics," and therefore reasonably responded "to what he could have assumed to be an adequately supported child welfare investigation."  902 F.3d 1136, 1149–51 (10th Cir. 2018).  The Fifth Circuit similarly granted qualified immunity to an officer who "had no reason to believe that he was violating [plaintiff's] First Amendment rights by following [a superior's] order."  *Heaney v. Roberts*, 846 F.3d 795, 804 (5th Cir. 2017).  And the Second Circuit, in an opinion authored by then-Judge Sotomayor, granted qualified immunity to officers who "reasonably could have concluded, given [a superior's] order, that probable cause existed to

seize" the plaintiff. *Anthony v. City of New York*, 339 F.3d 129, 138 (2d Cir. 2003) (Sotomayor, J.).

That Barr did not transcend a clearly established boundary by following Cole's order is all the more apparent when one considers that Hall was part of a much larger group of demonstrators, many of whom themselves were lawfully detained by officers. As a recording of the incident reveals, the scene at the time of the arrests was chaotic. *See Scott v. Harris*, 550 U.S. 372, 381 (2007) (viewing "facts in the light depicted by [a] videotape"). Individuals were running in all directions, smoke surrounded the melee, and events unfolded quickly. In the end, a busload of individuals was arrested for blocking traffic and related offenses and then transported to the detention center. That Hall would be rounded up with the others and taken to the same detention center is not surprising. Especially so, since he stood beside the group disobeying police orders by blocking the street and, like those protesters, was wearing tactical gear. It is reasonable then that Barr, absent other instruction, would have understood them all to be part of the same illegal activity, as other circuits have recognized in similar circumstances. *See, e.g.*, *Carr v. District of Columbia*, 587 F.3d 401, 408 (D.C. Cir. 2009) ("A requirement that the officers verify that each and every member of a crowd engaged in a specific riotous act would be practically impossible in any situation involving a large riot, particularly when it is on the move—at night."); *Bernini v. City of St. Paul*, 665 F.3d 997, 1005 (8th Cir. 2012) (granting qualified immunity because "[i]t was reasonable for the officers to believe they could arrest those who were acting as a unit with the protestors").

In short, it is not clearly established that Barr's conduct violated settled law. Again, Barr knew two things. One, he witnessed a group of protesters acting in ways he believed unlawful. Two, Cole had instructed him to issue a citation to Hall while Barr was ticketing other offenders at a detention center. Nothing in the record suggests that Barr would have known there was no probable cause justifying the latter order. Remember, Barr's interaction with Hall was limited. He did not see Hall protesting, did not witness Navarre tackle Hall, and was never informed of Hall's specific conduct. Hall was not present when Barr issued the ticket, and Barr did not connect Hall's name with any individual he had seen at the protest. He fairly understood that the individual to whom he was issuing the citation had been part of a group acting unlawfully

because he had been arrested. In short, Barr was acting on "plausible instructions from a supervisor," commands that were not undermined by other circumstances known to Barr. *Bunkley*, 902 F.3d at 562 (cleaned up). Accordingly, there is no clear basis to say that, in Barr's eyes, probable cause was lacking for Hall's citation. *See Saad*, 546 F. App'x at 559. Put differently, Barr was not "plainly incompetent" in following Cole's direction to cite Hall, nor did he "knowingly violate the law." *Malley*, 475 U.S. at 341. As a result, he is entitled to qualified immunity on Hall's First Amendment retaliation claim.

True, as Hall emphasizes, in *Bunkley* we held that the officers there could have reasonably concluded under the circumstances that they lacked probable cause to make an arrest despite orders to do the same. 902 F.3d at 562–64. But that was so because the officers were ordered to arrest an individual who did not match the victim's description of her assailant, and for whom they had taken no steps at corroboration nor investigation. *Id.* at 562. That scenario well demonstrates the daylight between, as here, taking a superior's instructions that have a plausible grounding in law and fact, and, as there, blindly following orders that do not. *See Hart v. Hillsdale County*, 973 F.3d 627, 647, 653–54 (6th Cir. 2020) (Readler, J., dissenting) (explaining that *Bunkley*'s instruction that "officers cannot blatantly ignore facts and fail to undertake any investigation, only to later point fingers at an unsuspecting commanding officer" is not a clearly established legal holding that "officers should . . . second guess[] their superiors").

The district court's holding that there is a genuine dispute of material fact whether Barr had probable cause to ticket Hall does not upset this conclusion. Whether qualified immunity applies is a distinct legal question from whether there was probable cause for the citation. *See District of Columbia v. Wesby*, 583 U.S. 48, 65 (2018) ("Even assuming the officers lacked actual probable cause, the officers are entitled to qualified immunity because they reasonably but mistakenly concluded that probable cause was present." (cleaned up)). Here, whether probable cause in fact existed is not the question at hand. Rather, it is whether it was clearly established that Barr should ignore a commanding officer's order when nothing known to Barr undermined the legitimacy of that order.

So too for the district court's finding that a genuine dispute exists over whether Hall's participation in protected activity motivated Barr's decision to cite Hall.  Even if Barr viewed Hall's protected political expression as grounds for arrest, he nonetheless had no reason to doubt that probable cause otherwise existed for Hall's arrest, given the instruction he received from his commanding officer as well as the surrounding circumstances.  In other words, it was not clearly established that ticketing Hall in that context violated a constitutional right he maintained, regardless of Barr's subjective motivation.

Hall, joined by the dissenting opinion, argues that *Thaddeus-X v. Blatter*, 175 F.3d 378 (6th Cir. 1999) (en banc) (per curiam), undermines the defense that Barr simply was following orders when he allegedly violated Hall's constitutional rights.  Not so.  There, we addressed claims that prison officials moved one of the plaintiffs to a less desirable area of a prison allegedly in retaliation for attempting to initiate a civil rights suit.  *Id*. at 383–84.  We rejected several arguments that the defendants were "merely executing their superior's orders" when they relocated the plaintiff.  *Id*. at 393.  We reasoned that "[r]eliance on a superior's orders does not in itself dissipate all liability," while recognizing that sometimes officials must "act quickly, with little time to ponder the legality of their actions."  *Id*.  Although exigency was not present there, we noted that urgent circumstances, when present, "are properly part of a defense of qualified immunity."  *Id*.  Said differently, when context and circumstances suggest orders are reasonable, an officer may rely on them without fear of liability.  That was the case here.

The dissenting opinion likewise faults us for purportedly grafting Fourth Amendment good faith principles onto a First Amendment retaliation claim.  That overreads our holding.  We are not cementing a substantive rule of constitutional law.  Again, our reasoning is limited to the clearly established component of the qualified immunity analysis.  And on that issue, as our respective opinions in part reflect, the precedent is mixed as to how Fourth Amendment principles inform the debate.  *Cf. Nieves v. Bartlett*, 587 U.S. 391, 403 (2019) (citing Fourth Amendment precedents to determine contours of First Amendment retaliation claim); *id.* at 415 (Gorsuch, J., concurring in part and dissenting in part) (criticizing majority opinion for "engrafting a [Fourth Amendment] requirement onto a First Amendment . . . claim"); *id.* at 427 (Sotomayor, J., dissenting) (criticizing majority opinion for "hybridizing two different

constitutional protections"). Said differently, no binding precedent interpreting either amendment clearly required Barr to disregard his superior's order until he could independently verify its validity. For an officer in Barr's situation, it was not beyond debate that issuing tickets in response to mass detentions of unlawful protestors at the seemingly reasonable command of a superior violated the First Amendment. That is enough to prevail on an assertion of qualified immunity.

Nor do we share the dissenting opinion's lament over our invocation of Barr's awareness of some basic, undisputed facts at the heart of this dispute. We do so simply to show that Barr had no reason to second-guess his superior's order and, in turn, no clearly established legal duty to disregard that command.

*          *          *          *          *

We affirm the judgment of the district court denying Hall's motion to adjourn the discovery schedule. We also affirm the judgment granting summary judgment to the City on Hall's *Monell* claim. We reverse the judgment denying qualified immunity to Barr.

---

## CONCURRENCE / DISSENT

---

GRIFFIN, Circuit Judge, concurring in part and dissenting in part.

Defendant Sergeant Timothy Barr cited plaintiff Timothy Hall for disorderly conduct, disobeying a police officer, and blocking traffic despite neither witnessing any conduct by Hall warranting the citations nor communicating with his colleagues about Hall. Barr issued the citations after his supervisor ordered him to do so.

Sergeant Barr now appeals the district court's denial of his motion for summary judgment based on qualified immunity as to Hall's First Amendment retaliation claim. I would affirm because, for purposes of summary judgment, Hall has demonstrated that by issuing these citations, Barr violated Hall's clearly established right to be free from retaliatory arrest unsupported by probable cause as a result of participating in a public protest. *See Novak v. City of Parma*, 932 F.3d 421, 429 (6th Cir. 2019). Accordingly, Barr is not entitled to qualified immunity on his motion for summary judgment. As the district court correctly held, issues of fact remain for the jury that underpin Barr's qualified immunity defense—notably, whether retaliation was a substantial or motivating factor for the issuance of the citations.[1]

Three issues plague the majority opinion's conclusion to the contrary. First, it grafts a Fourth Amendment good-faith probable cause framework onto our First Amendment retaliation analysis for the first time in our Circuit without explanation or justification. Second, it relies on factual inferences in Appellant Barr's favor, defying our jurisdictional limits. And third, contrary to our precedent, it holds that, as a matter of law, Barr's "simply following orders" defense is meritorious.

I join the majority opinion's resolution of the other issues on appeal as set forth in section II. Therefore, I respectfully concur in part and dissent in part.

---

[1]The other elements of a First Amendment retaliation claim—constitutionally protected conduct and adverse action—are not in serious dispute.

## I.

Today's opinion regarding Barr's interlocutory appeal rests on a major, unexplained, and novel assumption: that Barr's mistaken but good-faith belief that he had probable cause is just as effective as actual probable cause in defeating the causation element of Hall's First Amendment claim. Rather than draw attention to the novelty of this approach, or explain its basis, the majority simply applies the Fourth Amendment's good-faith exception to this First Amendment case. I cannot agree with this newly charted path.

It is well established in our Fourth Amendment jurisprudence that "where individual police officers, acting in good faith and in reliance on the reports of other officers, have a sufficient factual basis for believing that they are in compliance with the law, qualified immunity is warranted, notwithstanding the fact that an action may be illegal when viewed under the totality of the circumstances." *Humphrey v. Mabry*, 482 F.3d 840, 847 (6th Cir. 2007). But we have never applied that good-faith exception in the First Amendment context. Nor should we. Although probable cause plays a role in both First and Fourth Amendment claims, key differences abound.

Start with the claims' differing injuries and how the presence of probable cause affects each type of claim. The Fourth Amendment protects "against unreasonable searches and seizures" made without "probable cause." U.S. Const. amend. IV. So when police make a seizure unsupported by probable cause, the injury is the wrongful seizure itself. Consequently, the presence of probable cause will defeat a Fourth Amendment claim because there is no injury. *See, e.g.*, *Price v. Montgomery Cnty.*, 72 F.4th 711, 724 (6th Cir. 2023) (requiring a lack of probable cause to establish malicious prosecution), *cert. denied*, 144 S. Ct. 2499 (2024); *Brown v. Lewis*, 779 F.3d 401, 412–16 (6th Cir. 2015) (requiring a lack of probable cause to establish wrongful arrest).

Contrast that with the First Amendment, which protects against the government "abridging the freedom of speech." U.S. Const. amend. I. When a wrongful seizure leads to a First Amendment retaliation claim, the injury is the attendant chilling effects on free speech and not the wrongful seizure itself. *See Nieves v. Bartlett*, 587 U.S. 391, 397–99 (2019).

And because the absence of probable cause is not essential to the First Amendment injury, its presence does not automatically defeat a retaliation claim.

To be sure, the presence of probable cause will "generally defeat a retaliatory arrest claim" because it is "weighty evidence" that retaliatory animus did not motivate the unconstitutional seizure. *Id.* at 402, 405–06. But the Supreme Court carved out "a narrow qualification . . . for circumstances where officers have probable cause to make arrests, but typically exercise their discretion not to do so." *Id.* at 406. That qualification is important because it protects against the "risk that some police officers may exploit the arrest power as a means of suppressing speech." *Id.* Thus, while the presence of probable cause automatically defeats a Fourth Amendment claim, the same is not true for a First Amendment retaliation claim.

Next, consider how the Supreme Court has instructed lower courts to analyze each type of claim when probable cause is absent. Under the Fourth Amendment, we ask whether the officer nonetheless had a reasonable, good-faith belief that probable cause existed. *See District of Columbia v. Wesby*, 583 U.S. 48, 65 (2018) ("Even assuming the officers lacked actual probable cause . . . the officers are entitled to qualified immunity because they reasonably but mistakenly concluded that probable cause was present." (internal quotation marks and brackets omitted)); *Anderson v. Creighton*, 483 U.S. 635, 641 (1987) (holding that an official who "reasonably but mistakenly conclude[s] that probable cause is present" is entitled to qualified immunity). Following that instruction, we have held that if an officer violates the Fourth Amendment in good faith, then the officer is entitled to qualified immunity. *Smoak v. Hall*, 460 F.3d 768, 782 (6th Cir. 2006); *Humphrey*, 482 F.3d at 847.

But the Court's guidance in the First Amendment retaliation context differs. In such cases, "if the plaintiff establishes the absence of probable cause"—as the Court instructed in *Nieves*, 587 U.S. at 403—we must apply the test set forth in *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274 (1977). That is, the plaintiff must show that the retaliation was a substantial or motivating factor behind the arrest, and, if that showing is made, the defendant can prevail only by showing that the arrest would have been initiated without respect to retaliation. *Nieves*, 587 U.S. at 403.

That test does not allow an officer's subjective belief that probable cause existed to automatically defeat a retaliation claim.  Instead, *Nieves* established a more holistic evaluation:  whether retaliatory animus was a substantial or motivating factor behind the arrest.  Just as probable cause's presence does not automatically defeat a First Amendment claim, an officer's good-faith belief in the same will not either.  Of course, whether an officer reasonably and in good faith believed there was probable cause is part of the inquiry into what motivated the arrest.  But it is only part of the inquiry.  And the answer to that question does not, by itself, answer either question the Supreme Court instructed us to focus on:  (1) whether "retaliation was a substantial or motivating factor behind the arrest," and (2) whether "the arrest would have been initiated without respect to retaliation."  *Id.*

Rather than fundamentally alter the Supreme Court's framework for First Amendment retaliation claims, I would follow the Supreme Court's instructions and consider Barr's assertion of good faith as part of the *Mt. Healthy* test, not as a freestanding exception that automatically defeats Hall's First Amendment claim.  Under the *Mt. Healthy* approach, Hall's claim survives summary judgment.  As explained below, it is an open question whether Hall's participation in the protest was a substantial or motivating factor behind Barr's citations.  Barr must show that Hall would have been cited regardless of Hall's mere participation in the protest.  At this stage in litigation, Barr has not done so.

II.

Next, even if I were to accept the majority's framework and agree that an officer's good-faith belief alone defeats First Amendment retaliatory causation, the record does not support Barr's alleged good-faith probable cause belief.  Barr bases his good-faith belief on (1) other officers' collective knowledge and (2) his supervisor's order to issue the citations.  Our limited jurisdiction in this interlocutory appeal prohibits our review of the former and our precedent forecloses the latter.

A.

We have jurisdiction over an appeal of a denial of qualified immunity only to the extent that it "turns on an issue of law."  *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985).  We lack

jurisdiction over fact-based appeals that "challeng[e] the district court's determination of evidence sufficiency." *DiLuzio v. Vill. of Yorkville*, 796 F.3d 604, 609 (6th Cir. 2015) (internal quotation marks omitted) (citing *Johnson v. Jones*, 515 U.S. 304, 313 (1995)). Prohibited fact-based arguments include those that challenge the plaintiff's allegations (and the district court's acceptance) of facts, such as what conduct occurred, who committed it, and why. *Id.* Fact-based appeals encompass challenges to factual inferences that the district court drew in the plaintiff's favor as well as "evidence sufficiency" arguments, which question whether the evidence could support the finding of facts (or drawing of factual inferences) in plaintiff's favor. *Id.*; *see also Gillispie v. Miami Twp.*, 18 F.4th 909, 916 (6th Cir. 2021); *Adams v. Blount Cnty.*, 946 F.3d 940, 948–49 (6th Cir. 2020). If the defendant is "willing to accept the plaintiff's version of what happened, we can 'overlook' the factual dispute and address the legal dispute based on the plaintiff's account." *Bell v. City of Southfield*, 37 F.4th 362, 365 (6th Cir. 2022) (quoting *Adams*, 946 F.3d at 948).

We lack jurisdiction over Barr's argument that he had probable cause to cite Hall based on the collective-knowledge doctrine. The district court concluded that "it is not clear that other officers' knowledge should be imputed to Barr" because "the record is not clear that Barr and other officers communicated the relevant information among themselves." That factual determination ends the discussion because there cannot be collective knowledge without communication. *See Brown*, 779 F.3d at 412 (explaining that the "collective-knowledge doctrine" permits an officer to "conduct a stop based on information obtained from fellow officers" (internal quotation marks omitted)). And because the record is not clear one way or the other, whether there was communication among the officers is a factual determination for the jury, not a legal determination for us on interlocutory review.

Nevertheless, the majority imputes facts known and observed by other officers to Barr. For example, the majority asserts that Barr "witnessed a group of protestors acting in ways he believed unlawful." And the majority describes the "chaotic" scene depicted by a video recording of the incident. But the record belies these fact findings. Barr never personally saw protestors engage in unlawful behavior. Barr was not stationed on the block where Hall was arrested or even the block where the protesters gathered. Barr walked to the area where the

protests took place only after police officers shut down the protest.  And Barr did not see the video depicting Hall's arrest or the "chaotic" scene surrounding it before Barr cited Hall that evening.  It is therefore immaterial—for purposes of establishing probable cause—that Hall "stood beside the group disobeying police orders by blocking the street and, like those protestors, was wearing tactical gear," because the record does not suggest that Barr knew these details when he cited Hall.  Yet the majority ignores our jurisdictional limitation and construes the facts in a light favorable to Barr by relying on these details to support Barr's probable cause claim.

Looking past the collective-knowledge issue, the majority reasons that Barr "would have understood [the protestors] all to be part of the same illegal activity."  But Hall's presence among protestors who were involved in unlawful conduct is not enough to give rise to probable cause.  When an individual joins a group, he does not lose his individual rights.  *Cf. Ybarra v. Illinois*, 444 U.S. 85, 91 (1979) ("[A] person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person."); *United States v. Bell*, 762 F.2d 495, 499 (6th Cir. 1985); *see also Barham v. Ramsey*, 434 F.3d 565, 575 (D.C. Cir. 2006) ("[C]ase law addressing large-scale demonstration scenarios does not suspend—or even qualify—the normal operation of the Fourth Amendment's probable cause requirements."); *Wilson v. City of Boston*, 421 F.3d 45, 56 (1st Cir. 2005) (citing *Ybarra* and holding that individualized suspicion is required to arrest a member of a group); *Jones v. Parmley*, 465 F.3d 46, 60 (2d Cir. 2006) ("Defendants could not . . . have reasonably thought that indiscriminate mass arrests without probable cause were lawful under these circumstances."); *Bourgeois v. Peters*, 387 F.3d 1303, 1311 (11th Cir. 2004) ("The text of the Fourth Amendment contains no exception for large gatherings of people.").  Thus, our normal rules requiring individualized suspicion for an arrest and citation apply, and Barr is not entitled to qualified immunity simply because Hall was among the protestors.

### B.

Without collective knowledge about Hall's conduct at the protest, Barr's only basis for probable cause is the order from his supervisor.  Indeed, the majority relies heavily on Officer Brandon Cole's instruction as the linchpin for Barr's good-faith belief.  But, as we stated in *Thaddeus-X v. Blatter*, "[r]eliance on a superior's orders does not in itself dissipate all liability."

175 F.3d 378, 393 (6th Cir. 1999) (en banc) (Moore, J.).  The majority attempts to distinguish *Thaddeus-X* by asserting that the "context and circumstances" here suggest that Barr's reliance on Officer Cole's order was reasonable while the prison officials' reliance in *Thaddeus-X* was not.  But beyond that bare assertion, the majority does not explain how the circumstances of this case and *Thaddeus-X* differ in any meaningful way.  Indeed, the majority admits that, in *Thaddeus-X*, there was no exigency forcing the prison officials to make rushed decisions.  So too here.  Barr had time to independently determine whether probable cause supported the citations against Hall.  Barr could have spoken with other officers, including Navarre, to learn about Hall's alleged unlawful actions.  It seems that, on the record before us, Barr was unaware of the context and circumstances surrounding Hall's arrest.  And it is clearly established that Barr is not entitled to qualified immunity because he was "simply following orders."  *See Bunkley v. City of Detroit*, 902 F.3d 552, 563 (6th Cir. 2018).

III.

Without knowing whether Barr had collective knowledge to justify a belief that he had probable cause, and with precedent foreclosing Barr from arguing that he was simply following orders, we are left with Hall's asserted causal explanation:  Barr cited Hall just because he protested and was detained with other protesters who allegedly violated the law.  But this guilt-by-association explanation is the essence of Hall's retaliation claim.  It has long been "settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out."  *Hartman v. Moore*, 547 U.S. 250, 256 (2006); *see also Greene v. Barber*, 310 F.3d 889, 897–98 (6th Cir. 2002) (denying qualified immunity to an officer in a First Amendment retaliation case because genuine disputes of material fact existed about whether the officer arrested the plaintiff as retaliation for protected speech).

Without a finding of probable cause that generally defeats a retaliatory arrest claim, the issue of motive for the citations should go to the jury.  In this regard, I agree with the district court that,

> taking these facts in the light most favorable to Hall, a reasonable jury could conclude that Barr issued the ticket merely because he believed Hall was

protesting, and not because he thought Hall was individually violating the ordinances he was cited for.

Contrary to the majority, I conclude that the record before us supports the district court's ruling on causation.

## IV.

In sum, this is an interlocutory appeal from the denial of a motion for summary judgment based on qualified immunity. As such, our jurisdiction is limited to issues of law. *See Mitchell*, 472 U.S. at 530. Under the facts found by the district court and construed in the light most favorable to Hall, he was lawfully exercising his First Amendment right to protest, and he acted as directed by law enforcement by staying on the sidewalk. For purposes of summary judgment, Hall carried his burden of causation by showing that Barr's citations to him for his protected conduct without probable cause violated his clearly established First Amendment right not to be retaliated against.

For these reasons, I respectfully dissent from section III of the majority opinion. I would affirm the judgment of the district court.